UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
ALLSTATE INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, ALLSTATE FIRE &
CASUALTY INSURANCE COMPANY, and
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

                Plaintiffs,

   -against-

BRADLEY PIERRE, MEDICAL
REIMBURSEMENT CONSULTANTS INC.,
MARVIN MOY, M.D., RUTLAND MEDICAL P.C.
d/b/a MEDICALNOW, WILLIAM A. WEINER,
D.O., and NEXRAY MEDICAL IMAGING, P.C.
d/b/a SOUL RADIOLOGY MEDICAL IMAGING,

                Defendants.
------------------------------------------------------------

MEMORANDUM & ORDER
23-CV-06572 (NGG) (LB)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively, "Allstate" or "Plaintiffs") bring this action against Defendants Bradley Pierre, Medical Reimbursement Consultants Inc., Marvin Moy, M.D., Rutland Medical P.C. d/b/a MedicalNow, William A. Weiner, D.O., and Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging (collectively, "Defendants")[1], alleging that Defendants defrauded Allstate in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c), (d)), by submitting hundreds of fraudulent bills for no-fault insurance payments. (*See* Compl. (Dkt. 1) ¶¶ 459-542.)

---

[1] Defendants Medical Reimbursement Consultants Inc., Rutland Medical P.C. d/b/a MedicalNow, and Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging are hereinafter referred to as the PC Defendants.

1

Plaintiffs also allege common law fraud and unjust enrichment and seek a declaratory judgment as to all past, present, or future bills. (*Id.* ¶¶ 543-86.)

Currently before the court is Allstate's motion for a preliminary injunction to stay all 40 pending no-fault insurance collection arbitrations commenced against Allstate by Defendant Rutland Medical P.C. d/b/a MedicalNow ("Rutland").[2] (*See* Not. of Mot. (Dkt. 37); Mot. to Stay (Dkt. 37-1) at 1, 14.) Additionally, Plaintiffs request that this court waive their obligation to post security for the injunction. (*See id.* at 24-25.) For the reasons set forth below, Plaintiffs' motion for injunctive relief is GRANTED and their request for oral argument is DENIED as moot. Allstate's request that the court waive their obligation to post security is also GRANTED.

## I. BACKGROUND[3]

### A. New York's No-Fault Insurance Scheme

Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, et seq.), and the regulations

---

[2] Following the service of Allstate's opening motion, Defendant Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging ("Nexray") entered into a joint stipulation with Allstate agreeing to stay and enjoin its no-fault collection actions until the disposition of Allstate's declaratory judgment claim against Nexray in this action. Judge Nina R. Morrison so-ordered the stipulation on November 13, 2023. (*See* Min. Entry dated 11/13/2023; *see also* Consent Motion to Stay and Enjoin Nexray's Collection Actions (Dkt. 34).) Accordingly, this court need not address the claims against Nexray pursuant to the So-Ordered Stipulation.

[3] The following background is taken from the allegations of the Complaint and declarations submitted by Allstate in connection with this motion. The court also takes judicial notice of certain facts pertaining to Defendants Pierre, Moy, and Weiner because they are drawn from reasonable accurate sources, including public and published dockets. *See 725 Eatery Corp. v. City of N.Y.*, 408 F. Supp. 3d 424, 456 (S.D.N.Y. 2019) (citing Fed. R. Evid.

promulgated pursuant thereto (11 N.Y.C.R.R. § 65, et seq.) (collectively, "the No-Fault Laws"), an automobile insurer is required provide certain no-fault insurance benefits ("Personal Injury Protection" or "No-Fault Benefits") to the individuals that they insure ("Insureds"). No-Fault Benefits cover up to $50,000 for reasonable expenses incurred for necessary healthcare goods and services resulting from automobile accidents. *See* N.Y. Ins. Law §§ 5102(a)(1), 5102(b), 5103; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11 § 65-1.1. These benefits are provided "to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable frees for necessary healthcare services." (Compl. ¶ 72.) Consequently, this legislative scheme is designed to "ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *State Farm Mut. Auto. Ins. Co. v. Herschel Kotkes, M.D., P.C.*, No. 22-CV-03611 (NRM) (RER), 2023 WL 4532460, at *1 (E.D.N.Y. July 13, 2023)).[4]

Insureds may assign their No-Fault Benefits to healthcare providers in exchange for services, and in turn, the provider, rather than the Insured, files no-fault claims with the insurance company directly. *See* 11 N.Y.C.R.R. § 65-3.11(a) (providing that the benefits may be paid only "directly to the applicant" or "upon assignment by the applicant . . . directly to providers of health care services"). Providers are prohibited from receiving No-Fault Benefits, however, if they "fail[] to meet any applicable New York State or local

---

201(b)-(d)). The court need not take judicial notice of the exhibits cited by Allstate, however, as the court considers those documents as part of the record on this motion. *Id.*

[4] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

licensing requirement necessary to perform such healthcare services." *Id.* § 65-3.16(a)(12); *see also State Farm Mut. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 321 (2005). This includes, *inter alia*, that unlicensed professionals, *i.e.*, non-physicians, may not own or control a medical professional corporation; serve as a director or officer of said corporation; enter into any agreements with the corporation's shareholders; and receive shares or otherwise derive economic benefit from the corporation's professional services. (Compl. ¶¶ 81-86); *see* N.Y. Bus. Corp. Law §§ 1507-08; New York Education Law § 6530(19); *see also Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 371 (E.D.N.Y. 2012). Licensed healthcare services providers, including physicians, are also prohibited from engaging in fraudulent activity, including ordering excessive tests or treatment not warranted by the condition of the patient, failing to maintain accurate records for patients, making material misrepresentations regarding a provider's eligibility to seek or collect payment under New York's No-Fault laws, and/or accepting kickbacks in exchange for patient referrals. (Compl. ¶¶ 8, 87, 95-102); *see, e.g.*, N.Y. Bus. Corp. Law §§ 1503, 1507; New York Education Law § 6530; N.Y. Ins. Law § 5102(a).

Moreover, insurers are only given 30 days to review and investigate claims before paying those claims to avoid risk of penalty for denying or delaying a claim. *See* 11 N.Y.C.R.R. § 65-3.8(a); *see also Med. Soc'y of State of N.Y.*, 100 N.Y.2d at 861. After 30 days, interest begins to accrue at a rate of two percent per month. *See* N.Y. Ins. Law § 5106(a). Claimants may dispute unpaid no-fault claims either in a state civil action or in an arbitration proceeding. *See* 11 N.Y.C.R.R. § 65-4.1, *et seq.*; N.Y. Ins. Law § 5106(a). In no-fault collection actions, including arbitrations before the American Arbitration Association ("AAA"), the proceedings are conducted through "an expedited, simplified affair meant to work as quickly and efficiently as possible." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014). And these proceedings typically have "limited opportunities for pre-hearing discovery or

examinations of witnesses during the hearing," which "can produce differing—and often inconsistent—results." (Michael Flaherty Declaration ("Flaherty Decl.") (Dkt. 37-2) ¶¶ 8-9.) Moreover, New York's No-Fault laws impose mandatory, non-refundable fees upon insurers to help fund the costs of the no-fault arbitration system. (*Id.* ¶ 19); *see* 11 N.Y.C.R.R. § 65-4.2(c)(1). These fees are apportioned to insurers based on the number of collection arbitrations filed against them, meaning that costs to the insurers increase with each new arbitration filed regardless of whether the insurer prevails in the action. (Flaherty Decl. ¶ 19); *see* 11 N.Y.C.R.R. § 65-4.2(c)(1).

### B. Operation of the Alleged Scheme

The allegations reviewing the fraudulent scheme in Allstate's Complaint are overwhelming.

Defendant Marvin Moy, M.D., a licensed physician, purported to be the sole officer, director, and shareholder of Rutland but was merely a nominal owner. (Compl. ¶¶ 3, 11, 34-35.) In reality, Moy ceded actual control over Rutland to Defendant Bradley Pierre[5], a layperson who does not hold a medical license and therefore is not authorized to own, control, or manage a medical professional corporation ("PC"). (*Id.* ¶¶ 3, 11, 29, 32) In doing so, Pierre received the majority of the proceeds from various Clinics, including Rutland, and determined payment for nominal owners; possessed and pre-signed checks from the Clinics' bank accounts; controlled debit and credit cards for the Clinics; controlled the hiring and firing of employees; invested the initial funds to establish the Clinics; identified the locations for the Clinics; negotiated rent for the Clinics; and chose the attorneys to

---

[5] Defendant Pierre purported to control several no-fault clinics (the "Clinics"), including Nexray and Medical Reimbursement Consultants, Inc. ("MRI"), the two other PC Defendants in this action. (*Id.* ¶ 113 (citing Ex. 2 to Compl. (Dkt. 1-4) ("Superseding Indictment filed in Criminal Action") ¶¶ 14, 19).)

5

represent the Clinics in no-fault collection actions. (*Id.* ¶ 114.) Pierre utilized "phony lending agreements, check-cashing entities, and shell companies" to conceal the scheme and as a result, "profited every step of the way" from his control of Rutland and other Clinics, generating millions of dollars in kickback payments to Pierre. (*Id.* ¶¶ 119-24.)

According to Allstate, "[t]he success of the Defendants' scheme relied on a steady stream of patients with available No-Fault benefits." (*Id.* ¶ 142.) As part of this complex scheme, several players were involved as well as the use of bribery, runners, and kickbacks to generate patient referrals. (*Id.* ¶¶ 143-157.) As relevant to Rutland, Defendant Moy participated in this scheme by ensuring that Rutland "continued to submit bills to Allstate for as many services as possible—regardless of medical necessity—to generate money for the benefit of Pierre." (*Id.* ¶ 158.)

Rutland patients were examined soon after their motor vehicular accidents and ordered to undergo unnecessary and excessive services, including "(a) diagnostic imaging studies, (b) computerized range of motion and manual muscle testing, (c) physical performance testing, (d) chiropractic, acupuncture, and physical therapy, and (e) electrodiagnostic testing." (*Id.* ¶¶ 159-61.) For example, patients were ordered to undergo MRIs without any indication for such early imaging studies; without evidence of injury; and before any meaningful opportunity to undergo a course of conservative treatment. (*Id.* ¶¶ 162-67.)[6] Rutland patients were also ordered to undergo several other unnecessary and excessive services, such as physical therapy treatment, (*id.* ¶¶ 183-88), bogus computerized range of motion

---

[6] Rutland patients, as alleged by Allstate, were also referred to Nexray for MRIs, seemingly as a matter of course. (Mot. to Stay at 9). Notably, Nexray's facility was located next door to Rutland and Nexray billed for the MRIs without determining whether they were necessary. (Compl. ¶¶ 169, 177-82.)

and manual muscle testing, (*id.* ¶¶ 189-97), fraudulent physical performance testing, (*id.* ¶¶ 198-203), medically unnecessary outcome assessment testing, (*id.* ¶¶ 204-11), and medically unnecessary electrodiagnostic ("EDX") testing, (*id.* ¶¶ 212-30). Allstate alleges many of these services were duplicative, unnecessary, and costly. (Mot. to Stay at 9.)

As a result of this extensive scheme, Allstate has paid in excess of $2,749,000.00 for no-fault claims submitted by the PC Defendants. (Compl. ¶ 458.)

Moreover, Defendants Pierre, Moy, and Weiner are currently facing criminal charges related to the scheme and the very allegations at issue in this case. *See United States v. Pierre*, No. 1:22-CR-00019 (PGG) (S.D.N.Y.) (hereinafter, the "Criminal Action").

### C. Evidence of the Alleged Scheme

In support of its fraud claims, Allstate has submitted an abundance of evidence, including several tables listing charges for various services and testing at the Clinics. One table, totaling 518 pages, shows claims submitted by Rutland for physical therapy. (*See* Ex. 4 to Compl. ("Rutland PT Claims") (Dkt. 1-6).) Many of these claims include several of the same services listed for one claimant and others do not specify the service provided, noting them only as an "Unlisted therapeutic procedure." (*Id.*) Another chart, totaling 142 pages, shows claims submitted by Rutland for chiropractic services. (*See* Ex. 5 to Compl. (Dkt. 1-7).) One chart lists Rutland's physical performance testing claims running between $166 and $250 per claim. (*See* Ex. 7 to Compl. (Dkt. 1-9).). Allstate provides other charts for Rutland's services, including for muscle testing and range of motion testing, (Ex. 6 to Compl. (Dkt. 1-8)), outcome assessment testing, (Ex. 8 to Compl. (Dkt. 1-10)), and electrodiagnostic studies, (Ex. 9 to Compl. (Dkt. 1-11)). Allstate asserts that as a result of these fraudulent claims, it has paid at least $1,309,811.48 to Rutland alone.

7

(Compl. ¶ 458; *see also* Ex. 13 to Compl. (Dkt. 1-15).) Accordingly, Allstate seeks reimbursement of the more than $2,749,000.00 it has paid Defendants, (Compl. ¶ 458), in addition to a declaration that it is under no obligation to pay any pending or future no-fault insurance claims. (*Id.* ¶¶ 567-86.)

### D. Procedural History

Allstate commenced this action on September 1, 2023 by filing its Complaint alleging 12 counts, including violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c), (d); common law fraud; and unjust enrichment. (Compl. ¶¶ 459-556.) It also seeks a declaration that Defendants' "activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims[.]" (Compl. ¶¶ 567-86.) On October 26, 2023, Allstate served their motion for injunctive relief on Defendants Rutland and Nexray. (*See* Letter to Defendants (Dkt. 27).) On November 3, 2023, the court entered a briefing schedule related to the motion. (*See* Min. Entry dated 11/3/2023.) On November 9, 2023, Allstate notified the court that Allstate and Nexray entered into a joint stipulation consenting to the stay, and the court subsequently endorsed the stipulation. (*See* Min. Entry dated 11/13/2023; *see also* Consent Motion to Stay and Enjoin Nexray's Collection Actions (Dkt. 34).) Allstate's stipulation with Nexray did not change their request for relief nor the briefing schedule as to Rutland and as a result, Allstate filed their fully briefed motion for injunctive relief on November 14, 2023. (*See* Not. of Mot.; Mot. to Stay; *see also* Letter to Court re Mot. (Dkt. 38) at 1.)

Defendant Rutland has failed to appear in this action and therefore has not opposed the instant motion. (*See* Certificate of Default as to Rutland (Dkt. 33).) Its time to do so has now passed.

The court now turns to the motion.

8

## II. LEGAL STANDARD

A party seeking a preliminary injunction must "demonstrate (1) irreparable harm absent injunctive relief; and (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *See Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013).[7] Plaintiffs must establish these elements by a preponderance of the evidence. *See AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010).

Numerous courts in this Circuit—including this court—have granted injunctive relief for similar no-fault insurance fraud schemes. *See, e.g., See Allstate Ins. Co. v. Sky Radiology P.C.*, No. 23-CV-01832 (ENV) (CLP) (Dkt. 37), at 10 (E.D.N.Y. July 28, 2023); *Kotkes*, 2023 WL 4532460, at *13; *Gov't Emps. Ins. Co. v. Binns*, No. 22-CV-1553 (NGG) (PK), 2022 WL 4539361, at *10 (E.D.N.Y. Sept. 28, 2022); *Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *14 (E.D.N.Y. Mar. 29, 2022); *Allstate Ins. Co. v. Metro Pain Specialists Pro. Corp.*, No. 21-CV-5586 (DG) (RER), 2022 WL 2467571, at *7 (E.D.N.Y. June 2, 2022); *Gov't Emps. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 506 (E.D.N.Y. 2021); *Gov't Emps. Ins. Co. v. Wallegood, Inc.*, No. 21-CV-1986 (PKC) (RLM) (Dkt. 36), at 21 (E.D.N.Y. July 16, 2021); *Gov't Emps. Ins. Co. v. Beynin*, No. 19-CV-06118 (DG) (PK), 2021 WL 1146051, at *10 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Big Apple Med. Equip., Inc.*, No. 20-CV-5786 (PKC) (JRC) (Dkt. 52), at 22 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d

---

[7] "Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Id.*

443, 456 (E.D.N.Y. 2020); *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 235 (E.D.N.Y. 2018).

## III. DISCUSSION

### A. Stay of All Pending and Future No-Fault Collection Arbitrations

Plaintiffs ask this court to stay all pending no-fault collections actions before the AAA and enjoin Rutland from filing any further no-fault collection arbitrations until this action is resolved. (Mot. to Stay at 13.)

#### 1. Irreparable Harm

To establish irreparable harm, a party seeking preliminary injunctive relief must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). The harm "must be shown to be actual and imminent, not remote or speculative." *Id.*

Allstate argues that it will suffer irreparable harm because (1) there is significant risk of inconsistent results in the arbitration proceedings, (2) the time, effort, and money spent litigating these proceedings cannot be cured by money damages, and (3) arbitrations continue to be filed and adjudicated despite Defendant Moy, the sole official shareholder of Rutland, disappearing in October 2022.[8] (Mot. to Stay at 13-20.)

---

[8] It appears Defendant Moy may have died as a result of a boating accident and this court judicially notices the facts surrounding his disappearance. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Allstate alleges there are currently 40 arbitration proceedings pending between Rutland and Allstate, and each involves a determination of whether or not Rutland is entitled to collect no-fault payments. (*Id.* at 15; *see also* Flaherty Decl. ¶ 11.) Allstate argues that this is the same determination that will be made in this federal action thereby creating a risk of inconsistent outcomes between the collection actions and the declaratory judgement claims at issue in this case. (Mot. to Stay at 15.) In support, Allstate presents evidence to show that there have already been varying outcomes in prior arbitrations with Rutland. Mr. Flaherty, Special Investigation Unit Field Analyst for Allstate, submits to the court in his declaration that arbitrators have ruled in favor of Rutland, awarding it no-fault payments in some cases, and finding Rutland was not entitled to payments in other cases. (*See* Flaherty Decl. ¶ 9.) He further asserts that Allstate has identified thousands of additional no-fault bills submitted by Rutland and Nexray that could be filed before the AAA absent a preliminary injunction. (*Id.* ¶ 14.) Allstate argues that it will suffer irreparable harm if Rutland is allowed to bring these additional collection actions during the pendency of this case because the "outcome of those actions could be inconsistent with one another and, perhaps, the ruling in this case." (Mot. to Stay at 16 (quoting *Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048 (EK) (RER), 2022 WL 1810727, at *7 (E.D.N.Y. June 2, 2022)).)

This risk of inconsistent judgments is in addition to the expenditure of time, effort, and money that Allstate will exhaust "dealing with a 'morass of litigation' in the absence of relief that will "not be cured by money damages." (Mot. to Stay at 16 (quoting *Granovsky*, 2022 WL 1810727, at *7).) Allstate argues that even

---

In the Criminal Action, a "Letter of Presumed Death" was filed by Defendant Moy's counsel wherein they state that the United States Coast Guard "investigated Dr. Moy's disappearance" and because Moy was "not found in the ensuing search" he is "presumed dead." *See Pierre*, No. 1:22-CR-00019 (PGG), Letter of Presumed Death (Dkt. 262) at 1.

with a complete victory on all claims in this action, it will not be able to fully recover the money paid in connection with the arbitrations and state court proceedings absent injunctive relief. (Mot. to Stay at 17.) Moreover, Defendants are currently under indictment for their role in the fraudulent scheme and if convicted, they will likely be unable to satisfy an award of compensatory damages in the excess of $2,749,000.00 sought by Allstate in the present case. (*Id.* at 17-19.)

Several courts have found irreparable harm where, as here, "an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved globally in a single, pending declaratory judgment action." *Parisien*, 352 F. Supp. 3d at 233; *see also Gov't Emps. Ins. Co. v. Moshe*, No. 20-CV-1098 (FB) (RER), 2020 WL 3503176, at *1 (E.D.N.Y. June 29, 2020); *see also Elzanaty*, 929 F. Supp. 2d at 222; *Gov't Emps. Ins. Co. v. Zaitsev*, No. 20-CV-03495 (FB) (SJB), 2021 WL 3173171, at *2 (E.D.N.Y. July 27, 2021); *Wellmart RX, Inc.*, 435 F. Supp. 3d at 449-50 (E.D.N.Y. 2020) (collecting cases). And "[t]he unlikelihood that defendants . . . would, in any event, be able to satisfy a sustain damage award further supports a finding of irreparable harm." *Granovsky*, 2022 WL 1810727, at *8. These concerns, coupled with undisputed evidence that a portion of the costs "awarded to Defendants in a AAA or state court collection proceeding may be permanently unrecoverable, even if [Allstate] ultimately prevails in this case" satisfy the irreparable harm requirement. *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 390 (E.D.N.Y. 2022); *see Granovsky*, 2022 WL 1810727, at *8.

2. Serious Question Going to the Merits

"District courts in the Second Circuit have generally found that likelihood of success is not the focus at the early stages of a case involving an alleged scheme to defraud an insurer of assigned no-fault benefits because any likelihood of success inquiry would be premature." *Relief Med., P.C.*, 554 F. Supp. 3d at 498. Instead,

in these types of cases, courts look to "whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F. Supp. 2d at 217; *Kotkes*, 2023 WL 4532460, at *10; *see also Parisien*, 352 F. Supp. 3d at 234; *Landow*, 2022 WL 939717, at *12; *Wellmart RX*, 435 F. Supp. 3d at 453. "A serious question can be found when a plaintiff has adequately detailed a complicated scheme of alleged fraud activity, and its request for relief does not rest on mere hypotheticals." *Metro Pain Specialists*, 2022 WL 2467571, at *5.

Here, Allstate has sufficiently alleged that there is a serious question going to the merits of its declaratory judgment claim against Defendant Rutland. In its 102-page Complaint supported by numerous exhibits totaling thousands of pages, Allstate details an extensive and complex scheme centered around the fraudulent operation and control of Rutland, among other PCs, by non-physician Pierre for his own personal financial gain (Compl. ¶¶ 110-41); unlawful patient referrals to the PC Defendants pursuant to improper agreements and kickback schemes, (*id.* ¶¶ 142-144, 162-76); and fraudulent billing for unnecessary and excessive services yielding hundreds of false claims submitted to Allstate in violation of various New York state licensing laws. (*Id.* ¶¶ 158-161, 183-230.) Allstate further provides specific examples of Rutland's fraudulent billing practices, identifying numerous patient claims where services were billed as a product of predetermined treatment protocols and illegal referral arrangements, but unreported or misrepresented in treatment records. (*Id.* ¶¶ 231-373.)

Because Rutland has failed to respond to the allegations raised, the court finds that Allstate has "adequately detailed a complicated scheme of alleged fraud activity," *Elzanaty*, 929 F. Supp. 2d at 222. Moreover, in reviewing the voluminous record evidence, "it cannot be said that [Allstate's] request for injunctive relief rests on mere hypotheticals. *Parisien*, 352 F. Supp. 3d at

234. Accordingly, Allstate has raised serious questions going to the merits of its declaratory judgment claim.

### 3. Balance of Hardships

Finally, the court must determine whether the "balance of hardships tip[s] decidedly" in Allstate's favor. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). The court "need not pause on this question for long, as the irreparable harm factors discussed above also tip the equities squarely in [Plaintiffs'] favor." *Parisien*, 352 F. Supp. 3d at 234. Accordingly, Allstate's motion to stay pending and future no-fault arbitration proceedings is GRANTED.

### B. Authority to Enjoin Future No-Fault Collection Lawsuits

In addition to the arbitration proceedings, Allstate seeks a stay enjoining Rutland from commencing any no-fault insurance collection lawsuits against Plaintiffs pending the disposition of its declaratory judgment claim in this action. (Mot. to Stay at 13.)

Allstate does not address this court's authority to enjoin new state court proceedings, presumably because it recognizes this court's authority to do so. The Anti-Injunction Act "bars a federal court from enjoining a proceeding in state court unless that action is expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Relief Med., P.C.*, 554 F. Supp. 3d at 495 (quoting *Doc.'s Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93 (2d Cir. 2019)). While the Anti-Injunction Act may limit federal district courts' authority to enjoin *pending* state court proceedings, *Mayzenberg*, 2018 WL 6031156, at *7 (citing 28 U.S.C. § 2283)[9], there is no dispute that the Act does not "prevent a federal court from restraining a

---

[9] But see this court's holding in *Landow*, 2022 WL 939717, at *13, staying pending state civil court proceedings.

party from instituting *future* state proceedings." *Relief Med., P.C.*, 554 F. Supp. 3d at 496 (emphasis added) (collecting cases). Accordingly, courts look to the "traditional standards" for such injunctive relief. *Mayzenberg*, 2018 WL 6031156, at *9.

For the reasons this court has previously discussed, Allstate will be irreparably harmed if it is subject to numerous state court proceedings with the potential to result in varying outcomes. *See id.* ("It is in the interests of judicial economy to resolve the controversy in a single action, rather than require the parties and the lower courts to engage in piecemeal and repetitive litigation."); *see also Elzanaty*, 929 F. Supp. 2d at 222 (finding that "all parties will benefit from having the issue of fraudulent incorporation determined in one action"). Allstate's motion to enjoin future state court collection lawsuits by Rutland pending disposition of the declaratory judgment action is therefore GRANTED.

### C. Security for the Injunction

Allstate also asks the court to use its discretion to waive the security requirement of Fed. R. Civ. P. 65(c). Rule 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Courts in this district have repeatedly concluded when granting a motion to stay no-fault arbitrations that claims of fraud pertaining to New York's no-fault insurance laws, and fraud against the healthcare system generally, implicate the "enforcement of public interests," an exception to Rule 65(c)'s requirement of security. *See Wallegood*, No. 21-CV-01986, at 19-20; *Landow*, 2022 WL 939717, at *14.

Because this court has determined that a preliminary injunction will not result in prejudice to Rutland, it finds that Allstate need not post bond in this case. Accordingly, the court WAIVES Rule 65(c)'s security requirement.

15

## IV. CONCLUSION

For the reasons stated above, Allstate's motion for preliminary injunctive relief is GRANTED. Consequently, (1) all pending no-fault collection arbitrations by Rutland (or its agents) against Plaintiffs are stayed and (2) Rutland is enjoined from filing any further no-fault collection arbitrations or lawsuits against Allstate pending resolution of the instant federal action. Allstate's request that the court waive their obligation to post security is also GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
January 8, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge